UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FELICE I. IACANGELO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2086 (PLF) |
| | ) | |
| GEORGETOWN UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

At a status conference in this matter on June 26, 2007, the Court discussed with defense counsel, Megan Hills, Esq., of Williams & Connolly, the Court's concern about an actual, apparent or potential conflict of interest between defendants Georgetown University and Dr. Vance E. Watson. See Transcript of June 26, 2007 Status Conference at 3-14. At that time, the Court was particularly concerned about the prospect of the same lawyer or law firm representing Georgetown University, Dr. Watson, and an in-house lawyer for Georgetown University Hospital, Sheila Zimmet, at Ms. Zimmet's deposition. See id. at 9 ("Watson's counsel has to stand by Watson's credibility, but Watson's counsel also has to stand by Sheila Zimmett's [sic] credibility since she is a Georgetown employee."). The Court directed that Williams & Connolly get Dr. Watson a separate lawyer to advise him on whether an actual or potential conflict existed. Id. at 11-12.

The following day, the Court issued a Memorandum Opinion and Order reflecting what it had said at the status conference (which it behooves counsel to re-read again, carefully), concluding that Ms. Zimmet was entitled to separate and independent counsel for purposes of representing her at her deposition and directing that Georgetown University assist Dr. Watson in obtaining independent counsel "to advise him on the issue of whether a conflict of interest has arisen between his interests and those of defendant Georgetown, or whether there is a possible or potential conflict of interests [sic] in view of both his [Dr. Watson's] deposition testimony and Sheila Zimmet's forthcoming deposition testimony." Iacangelo v. Georgetown Univ., Civil Action No. 05-2086, Memorandum Opinion and Order at 4 (D.D.C. June 27, 2007). The Court further ordered defendants' counsel to file a notice with this Court identifying the independent counsel retained for Dr. Watson. See id. Finally, the Court directed that once Dr. Watson had obtained the advice of independent counsel, said independent counsel "shall file a report with this Court setting forth that counsel's analysis of the conflict or potential conflict issue, accompanied by an affidavit from Dr. Watson stating his decision, if any, to waive or not waive any conflict." Id.

On July 17, 2007, counsel for defendants Georgetown University and Dr. Watson filed a notice pursuant to the Court's June 27, 2007 Memorandum Opinion and Order notifying the Court that George R. Clark, Esq., had been retained as separate counsel for Dr. Watson to advise Dr. Watson of any conflict of interest and to attend the deposition of Sheila Zimmet on his behalf. See Iacangelo v. Georgetown Univ., Civil Action No. 05-2086, Defendants' Notice at 1 (D.D.C. July 17, 2007). Since that time, two years have elapsed without Mr. Clark having filed

the report (and affidavit from Dr. Watson) required by the June 27, 2007 Memorandum Opinion and Order.

The Court now has before it plaintiffs' motion for reconsideration of Magistrate Judge Alan Kay's June 17, 2008 Memorandum Opinion and defendants' opposition to that motion. In its effort to defeat the argument for the testimony of proffered legal experts at the trial of this medical malpractice case, counsel for the defendants argue that the communication of legal information from Georgetown University's in-house counsel, Sheila Zimmet, to Dr. Watson is "wholly irrelevant" to the "only issue" in this case, which counsel identifies as "whether Dr. Watson's medical treatment of Mrs. Kerris breached the standard of [medical] care for treating interventional neuroradiologists[.]" Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Magistrate Judge Kay's June 17, 2008 Order at 3. Counsel continue: "As the healthcare provider at issue, Dr. Watson's decision to use a non-FDA approved device to treat a patient was his alone." Id. at 4. While counsel go on to discuss the doctrine of *respondeat superior* and the obligation of Georgetown University to pay any damages that may be assessed after trial against Dr. Watson, see id., the argument that the decision to use a non-FDA approved device was Dr. Watson's "alone" -- regardless of what Ms. Zimmet advised him or what anyone else at Georgetown may have said or done -- only seems to reinforce the Court's initial view that a conflict of interest exists (or may in the future exist) between Georgetown University and Dr. Watson.[1]

_____

[1] In their reply brief, plaintiffs state:

The facts disclosed in discovery established that Defendant Dr. Watson relied on Ms. Zimmet's advise [sic] as to the legality of the devices. Dr. Watson stated that if Ms. Zimmet had told him that

Thus, the following questions must be addressed by Williams & Connolly and by Mr. Clark -- after Mr. Clark fully discusses this matter with Dr. Watson. Does Georgetown University stand behind Ms. Zimmet or behind Dr. Watson, both with respect to the pending motion and, if necessary, at trial? What do Ms. Hills and her colleagues intend to tell the jury at trial -- that Dr. Watson was solely responsible for what happened? Or that he shared responsibility with the Hospital? If the Court rules that testimony from Ms. Zimmet and others about her legal advice to Dr. Watson *is* relevant and will be admitted (with or without the explanation of the expert opinion testimony proffered by plaintiffs), then will the defendants argue that Dr. Watson should not be held liable at all while their other client (Georgetown University) should be? Will Georgetown University in fact pay all damages and expenses for Dr. Watson, if he is found liable, including any punitive damages that may be assessed? And how would Georgetown University Hospital compensate Dr. Watson were he to lose his license to practice medicine as a result of this litigation?

As these questions indicate, the Court cannot, at this point in time, comprehend how Ms. Hills and Williams & Connolly can represent both Georgetown University and Dr. Watson. If Mr. Clark has a different view after consulting with his client, he may provide it in

---

the devices were illegal, he would not have used them. (Motion, p. 2). There is also testimony by Ms. Zimmet that she did not believe that she had to do, nor did she do, any research of the Import Alerts or review of the statutes to determine whether the devices were in fact legal. (Id. at pp. 2-3).

Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Magistrate Judge Kay's June 17, 2008 Memorandum Opinion at 3.

the report that should by now have been filed, accompanied by an affidavit from Dr. Watson.

For these reasons, it is hereby

ORDERED that, on or before July 31, 2009, counsel for the defendants shall file a response to the questions set out above, see supra at 3-4; and it is

FURTHER ORDERED that, on or before July 31, 2009, Mr. Clark shall file the report (and affidavit from Dr. Watson) called for by this Court's June 27, 2007 Memorandum Opinion and Order and as now informed by this Memorandum Opinion and Order.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: July 16, 2009